IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA V. ANDERSON,<br><br>       Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security<br><br>       Defendant.<br>_____/ | No. C-05-01331 EDL (EDL)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMANDING CASE** |

## I.  INTRODUCTION

Plaintiff Laura Anderson applied for social security disability insurance benefits and supplemental social security income benefits a number of times. Her first two applications were denied, but because she did not appeal them, they are not at issue here. In 2002, Plaintiff tried once more to obtain benefits, basing her request on low back pain, recurrent deep vein thrombosis and chronic groin pain. See Administrative Record ("AR") at 42. The Social Security Administration ("SSA") denied her application on June 24, 2002. Id. The SSA also denied Plaintiff's request for reconsideration on January 10, 2003. AR at 47. Plaintiff then requested a hearing with an administrative law judge, which took place on June 17, 2003. AR at 16-23, 52. On July 3, 2003, the ALJ found that although Plaintiff had myofascial pain and depression, she did not have an impairment or combination of impairments that qualified her for disability under the SSA guidelines. AR at 22-23. The Appeals Council denied Plaintiff's request for review on January 27, 2005, making the ALJ's decision final. AR at 8.

On April 1, 2005, Plaintiff filed this suit in federal court. In moving for summary judgment,

1  Plaintiff contends that the ALJ failed to consider or improperly discounted evidence regarding her
2  mental illness, her fibromyalgia, and her obesity, and that his assessment of her credibility was not
3  supported by substantial evidence. Defendant opposed Plaintiff's motion and filed a cross-motion
4  for summary judgment arguing that the ALJ's decision is supported by substantial evidence and free
5  of error.

6  For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART
7  Plaintiff's motion for summary judgment and Defendant's cross-motion for summary judgment.
8  The ALJ erred by improperly discounting the opinions of Plaintiff's treating doctors and by failing
9  to consider the entire record, but he did not err when he failed to consider Plaintiff's obesity.

## II.  STANDARD OF REVIEW

The district court reviews the findings of fact in the final decision to determine whether they are supported by substantial evidence in the whole record and not based on legal error. 42 U.S.C. § 405(g); Desrosiers v. Secretary of H.H.S., 840 F.2d 573, 575-76 (9th Cir. 1988). A proposition supported by substantial evidence is one that a reasonable mind might accept as adequate to support a conclusion. Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); see also Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997) ("Substantial evidence is more than a scintilla, but less than a preponderance").

The court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Jamerson, 112 F.3d at 1066 (quoting Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1997)). If "the evidence is susceptible to more than one rational interpretation," the Commissioner's decision should be upheld. Sandgathe, 108 F.3d at 980.

## III.  SUMMARY OF EVIDENCE BEFORE ALJ

### A. Work-history and daily activities

At the time of the hearing, Plaintiff was 36 years old. See AR at 60. She completed high school and at least one year of college. AR at 129. She was a certified nurse's assistant between 1989 and 1992. AR at 91, 109. Plaintiff reports that after pulling her back several times and hurting her hips, she left that line of work because her back "couldn't take it any more." AR at 182-83

1  (describing pain as "intense"). She then began working in a fast-food restaurant. AR at 91, 109. On
2  June 26, 1996, Plaintiff suffered a debilitating back accident during her shift at McDonald's. AR at
3  186, 386. She settled a workers' compensation claim arising out of that accident, and continued to
4  work as a fast food employee until 1997. AR at 91, 109. She was unemployed until 2001, when she
5  worked for nine months as a clerk for the California Prison System. AR at 142. She left that job on
6  November 9, 2001 because she could no longer stand the pain or perform the basic functions of her
7  job. AR at 142; see also AR at 376-378.

8      Plaintiff reports that she is very limited in her daily activities. See AR 373-385. She cooks
9  light, easy meals for her daughter, she loads the laundry machine but needs help folding and putting
10 away the laundry, she vacuums but must take breaks, she wipes down the bathroom sink, and she
11 mops by dropping a wet towel onto the floor and moving it with her feet. Id. Plaintiff no longer can
12 hike, play any sports, play guitar, weight-lift, crochet, work on her car, sit through a movie, or do
13 yard work. AR at 375. The pain keeps her up at night and she is lucky to get 3-4 hours of sleep.
14 AR at 379. She reports that the pain killers she takes do not "even touch the pain until [the] 2nd or
15 3rd dose." AR at 379.

16     **B. Evidence of Plaintiff's mental illness.**

17     Two of Plaintiff's treating physicians diagnosed her with depression. Dr. Katrina Groves has
18 been Plaintiff's primary care physician continuously since 1996 and treated her initial back injury.
19 AR at 891. Dr. Groves diagnosed Plaintiff with depression as early as 1997, and repeated that
20 diagnosis throughout the years, including in 2003. See AR at 864 ("major depressive disorder"),
21 870, 882, 999 ("underlying severe depression" and "significant personality disorder"), 1001, 1005-
22 06. In 1997, Dr. Groves prescribed Wellbutrin, an anti-depressant. AR at 882. She increased the
23 dosage the following year. AR at 864. As of 2003, Plaintiff was still taking anti-depressants. AR at
24 999. In 1995, 1998 and 2003, Dr. Groves referred Plaintiff to different psychologists in order to
25 further evaluate and treat her mental health. See AR at 443, 871, 1003. In 2003, Plaintiff began
26 seeing one of these psychologists, Dr. Robert Levine. He also diagnosed Plaintiff with a depressive
27 disorder, an adjustment disorder with depressive and anxious mood, and noted that her prognosis
28 was poor. AR at 1003. In a May 2003 letter, Dr. Groves wrote that Plaintiff

3

also suffers from depression and anxiety disorder as well as an anger management disorder, borderline personality, and post-traumatic stress disorder. She's been in counseling recently and does take antidepressants but neither have markedly improved her sense of well-being. . . . [the] patient is severely disabled both physically and psychologically and I believe will never be able to seek any gainful employment.

AR at 1005-06.

Two other physicians also examined Plaintiff at the request of the SSA. In March 2000, Dr. Michael Joyce examined Plaintiff and found that her mental status was unremarkable: "[a]t this time, the claimant is capable of completing a workday and workweek without interruption from psychologically based symptoms." AR at 920. Importantly, this examination took place almost twenty months before Plaintiff's alleged onset date of November 9, 2001. AR at 1007. Dr. Gabrielle Paladino examined Plaintiff in December 2002, approximately one year after the alleged date of onset. AR at 903-910. In contrast to Dr. Joyce, she concluded that Plaintiff's symptoms would meet the diagnostic criteria for major depression, that it was unlikely that Plaintiff could "predictably and reliably relate with, interact with, and deal with others" and that to "a reasonable degree of medical certainty, the claimant is unemployable from a psychiatric point of view due to a significantly decreased stamina and stress tolerance, mainly secondary to pain. Prognosis for this claimant is poor." AR at 909.

### C. Evidence of Plaintiff's fibromyalgia.

Dr. David Ramin examined Plaintiff at the request of the SSA in February 2000, well over a year before the alleged date of onset. After finding no abnormalities, he noted that Plaintiff had full range of motion in her back, and that she "certainly does not have any criteria to have fibromyalgia." AR at 922-924. In June 2002, Dr. Dean Chiang also examined Plaintiff at the request of the SSA. AR at 911. Although he found no abnormalities, he confirmed tenderness throughout the spine. AR at 914. When Plaintiff's treating physician examined her in December 2002, she found "multiple fibromyalgia trigger points that are classic including the back myofascial pain in the hips and the lumbosacral area." AR at 982.

### D. Evidence of Plaintiff's obesity.

Plaintiff's various physicians have noted that she is 5'2" tall and that her weight has fluctuated between 188 and 204 pounds. AR at 543 (2001 at 204 pounds), 922 (2000 at 195

4

pounds), 918 (2000 at 188 pounds). The record does not show her weight at the time of her hearing before the ALJ in 2003.

### E. Evidence regarding Plaintiff's credibility.

Plaintiff's partner submitted four third party questionnaires corroborating Plaintiff's reports of pain and limited functioning. See AR at 243-270. Two of these questionnaires were submitted after Plaintiff's alleged date of onset.

Dr. David Ramin examined Plaintiff at the request of the SSA in February 2000, and noted that there were inconsistencies in the examination, that she did not want to follow directions during the examination, and that she used a cane and walked abnormally when she first entered his office, but that her gait changed when she walked out. AR at 921-924. He found that Plaintiff had secondary gains. AR at 924.

In June 2002, Dr. Dean Chiang also noted that he did not believe Plaintiff performed up to her true abilities during his examination and opined that "her true strength is stronger and is either limited by pain or poor effort." AR at 914, see also AR at 915 ("poor strength . . . I attribute to poor effort on her part").

### F.    The ALJ's decision.

The ALJ found that Plaintiff "has myofascial pain and depression and that these conditions constitute a 'severe impairment' in that they have more than a minimal effect on claimant's ability to work. However, the record fails to show that the claimant's impairments either singly or in combination are of sufficient severity to meet a listed impairment." AR at 20. The ALJ also found that Plaintiff's allegations of severe and debilitating pain were not credible, and that her treatment for mental disorder has not lasted nor could be expected to last for any continuous 12-month period. (It is unclear why the ALJ focused on the duration of Plaintiff's treatment rather than on the duration of her impairment.) He determined that Plaintiff had the residual functional capacity to perform work-related activities with some restrictions, that she could sit for six hours, stand and walk for four to six hours, and requires a sit/stand option where she can change position up to fifteen minutes each hour, that she could lift twenty pounds frequently, ten pounds occasionally. He found that Plaintiff had "'mild' restriction of activities of daily living, social functioning and concentration/

1 persistence/ pace" and that her past relevant work as a clerk did not require her to perform activities
2 precluded by the stated limitations. Finally, he determined that Plaintiff's impairments did not
3 prevent her from performing past relevant work, and that she was not disabled. See AR at 22-23.

## IV. DISCUSSION

### A. The ALJ erred by rejecting the opinion of Plaintiff's treating physicians.

#### 1. Standards for rejection a treating physician's opinion.

In examining the medical evidence, courts distinguish between findings and opinions by: (1) treating physicians (those who treat the claimant); (2) examining physicians (those who examine but do not treat the claimant); and (3) non-examining physicians (those who neither examine nor treat the claimant, but who are usually called upon by the ALJ for testimony or submit reports after examining the claimant's medical records). See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). In general, more weight is given to a treating physician's statement than to an examining physician's statement because the treating doctor "'is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" Magallanes, 881 F.2d at 751 (quoting Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)); see also Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1988). The treating physician's opinion, however, is not conclusive. See Magallanes, 881 F.2d at 751. "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Id.; see also Andrews, 53 F.3d at 1041. For example, "the ALJ need not accept a treating physician's opinion which is 'brief and conclusionary in form with little in the way of clinical findings to support its conclusion.'" Magallanes, 881 F.2d at 751 (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1986)).

To reject an uncontroverted treating physician's report, the ALJ must state clear and convincing reasons for doing so. Magallanes, 881 F.2d at 751. To reject the opinion of a treating physician that conflicts with that of an examining physician, the ALJ must "make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans, 853 F.2d at 647; see also Andrews, 53 F.3d at 1041. The ALJ can show specific and legitimate reasons based on substantial evidence by "setting out a detailed and thorough summary of

1  the facts and conflicting clinical evidence, stating his interpretation thereof and making findings."
2  Magallanes, 881 F.2d at 751 (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)); see
3  also Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).  If the treating physician's opinion is
4  based solely on a patient's subjective complaints of pain, that fact may constitute a specific,
5  legitimate reason for disregarding the physician's opinion.  Fair, 885 F.2d at 605.

**2.      Dr. Groves and Dr. Levine diagnosed Plaintiff as being depressed and severely limited in her functioning.**

8        The ALJ made two factual errors in assessing Plaintiff's mental illness.  First, he erroneously
9  concluded that Plaintiff's "treatment for mental disorders has not lasted, nor at this point can it be
10 expected to last for any continuous 12-month period."  AR at 21-22.  However, Plaintiff had
11 received regular treatment from Dr. Groves for six years and under her care had been taking anti-
12 depressants since 1997.  Plaintiff also made four visits to Dr. Levine in 2003.  Second, the ALJ
13 erroneously stated that "[t]here is no evidence to support claimant's assertions of severe depression
14 or other mental disorder."  AR at 21.  To reach this conclusion, the ALJ had to discount two treating
15 doctors and one consultative doctor.  Without explaining what "objective findings" he would have
16 expected from the physicians, the ALJ stated that there was "a relative paucity of objective clinical
17 findings by the consultative psychiatric examiners, and a similar scarcity of objective findings
18 indicated by Dr. Levine."  AR at 20-21.  Although he acknowledged at one point that Dr. Levine had
19 diagnosed Depressive Disorder and Adjustment Disorder, he elsewhere stated inconsistently that Dr.
20 Levine had not diagnosed depression.  See AR at 20; cf. AR at 17.  In any event, the ALJ seems to
21 have discounted the opinion because Dr. Levine had only treated Plaintiff four times.  AR at 20.
22 Despite the fact that Plaintiff's treating physician Dr. Groves and her examining physician Dr.
23 Palladino both diagnosed Plaintiff with severe or major depression or other mental illnesses, the ALJ
24 disagreed with both of them "based on the extent of treatment and the limited finding in the medical
25 records" and therefore did not "accord controlling or significant weigh[t] to the opinion of the
26 treating physician."  AR at 21.
27       Thus, the ALJ rejected the opinion of not one but two treating doctors and one SSA
28 examiner.  Drs. Groves, Levine and Palladino all diagnosed depression or some other mental illness.

1  The only evidence in the record that contradicted these opinions was the report of another examining
2  physician, Dr. Joyce, but that report is entitled to less weight than the treating doctor and in any case
3  predated the date of onset. It therefore is fair to say that Dr. Groves' report regarding Plaintiff's
4  depression was uncontradicted, as was her opinion that Plaintiff was "severely disabled both
5  physically and psychologically and . . . will never be able to seek any gainful employment." AR at
6  1006. Thus, the ALJ had to provide "clear and convincing" reasons for discounting Dr. Groves'
7  opinion. He did not. Even assuming that Dr. Joyce's older report conflicted with both examining
8  doctors, the ALJ did not set forth specific, legitimate reasons based on substantial evidence. The
9  substantial evidence was to the contrary, that Plaintiff suffered a serious mental illness during the
10  time for which she sought benefits.

11  The Court therefore grants Plaintiff's motion for summary judgment and remands the case to
12  the ALJ to properly consider the reports of Plaintiff's treating physicians and, if he continues to
13  disagree with them, to articulate clear and convincing reasons for discounting them.

### 2. Dr. Groves diagnosed Plaintiff as having fibromyalgia.

15  Fibromyalgia has been described as an "elusive and mysterious" disease whose "symptoms
16  are entirely subjective." Sarchet v. Chater, 78 F.3d 305, 306 (9th Cir. 1996) ("The principal
17  symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and–the only symptom that
18  discriminates between it and other diseases of a rheumatic character–multiple tender spots, more
19  precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least
20  11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to
21  flinch.") In December 2002, Doctor Groves found "multiple fibromyalgia trigger points that are
22  classic including the back myofascial pain in the hips and the lumbosacral area[.]" AR at 982. In his
23  opinion, however, the ALJ found that Plaintiff had "no evidence of fibromyalgia and appropriate
24  trigger point distribution." AR at 21.

25  In reaching this conclusion, the ALJ was entitled to weigh contradictory evidence. In
26  February 2000, Dr. Ramin found no abnormalities when he examined Plaintiff and noted that she
27  "certainly does not have any criteria to have fibromyalgia." That finding, however, predated the
28  claimed date of onset. During the relevant period in June 2002, another examining doctor, Dr.

8

1 Chiang, similarly found no abnormalities; however, he confirmed tenderness throughout the spine.
2 Moreover, Dr. Chiang did not address whether he examined Plaintiff for trigger points. Thus, while
3 the ALJ could potentially use their findings to discount Dr. Groves' diagnosis, he needed to
4 articulate clear and convincing reasons for doing so. Simply ignoring the fact that Dr. Groves had
5 found trigger points that she described as "classic" (strongly implying that Plaintiff met the criteria
6 regarding the location of trigger points) was an error. The Court accordingly remands the case to the
7 ALJ. If the ALJ finds the evidence of fibromyalgia inconclusive, he should develop the record
8 appropriately.

### B. The ALJ failed to consider the entire record.

10 The ALJ was required to consider all the evidence in Plaintiff's record. See 20 C.F.R.
11 § 404.1520(a)(3); see also Magallanes, 881 F.2d at 750. Plaintiff argues that he failed to do so when
12 he ignored third party questionnaires, her obvious obesity, and her own reports of pain.

### 1. The ALJ erred by overlooking two third party questionnaires.

14 Celeste Schiffner, who resides with Plaintiff, submitted four Daily Activities Questionnaires
15 to support Plaintiff's applications for benefits. See AR at 243-270. In these questionnaires, Ms.
16 Schiffner corroborates a number of Plaintiff's statements regarding her physical and mental
17 limitations, and her physical pain. The ALJ, however, failed to mention any of the questionnaires.
18 Defendant argues that this constituted harmless error. Plaintiff disagrees: "Ignoring the reports is
19 not harmless error. The decision in this case hinges entirely on Ms. Anderson's credibility. It was
20 essential the reports be considered because [they] totally support Ms. Anderson's credibility.
21 Failure to consider her friend's evidence renders the decision invalid as a matter of law." Motion at
22 13. See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996) ("Lay witness testimony as to a
23 claimant's symptoms or how an impairment affects ability to work *is* competent evidence . . . and
24 therefore *cannot* be disregarded without comment") (emphasis in original). To properly discount lay
25 witness testimony about a claimant's symptoms and how they affect functioning, the ALJ "must
26 give reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).
27 The ALJ, however, did not even mention the questionnaires.
28     Although Defendant correctly argues that ignoring the two questionnaires that were

9

1  completed before Plaintiff's alleged onset date of November 9, 2001 was harmless, that does not
2  excuse the ALJ's failure to mention the two later questionnaires.  Defendant now attempts to explain
3  the reasons why the ALJ could properly discount these two questionnaires, but since the ALJ failed
4  to articulate any reason for doing so, Defendant's arguments are improper post-hoc rationalizations.
5  See SEC v. Chenery, 318 U.S. 80, 87 (1943).  If he was aware of the questionnaires but disregarded
6  them, the ALJ must provide specific reasons as to why he did so.  The Court thus remands the case
7  so that the ALJ may consider the lay witness testimony and, if he discounts it, provide specific
8  reasons for doing so.

### 2. The ALJ did not err in ignoring Plaintiff's obesity.

The ALJ did not mention Plaintiff's weight, although the record contains a number of references to Plaintiff's obesity.  Plaintiff now argues that Social Security Ruling 02-01p and 20 CFR section 404(P), Appendix 1, ¶ 1.00Q require that obesity be considered when determining residual functional capacity.  Motion at 14-15.  As Plaintiff has alleged orthopedic problems, she argues that it is reversible error to disregard obesity when determining work capacity.  Id. at 15 (citing Celaya v. Halter, 332 F.3d 1177 (9th Cir. 2003)).  In Celaya, the ALJ found that the plaintiff had two severe impairments which did not qualify as disabilities, but he did not consider whether the plaintiff's obvious obesity interacted with the other impairments.  The Celaya Court held that this was error, and reversed in part and remanded because "[t]he ALJ was responsible for determining the effect of Celaya's obesity upon her other impairments, and its effect on her ability to work and general health, given the presence of those impairments."  332 F.3d at 1182.  Here, the ALJ also found that Plaintiff had two severe impairments (myofascial pain and depression), that these impairments had "more than a minimal effect on claimant's ability to work[,]" but held that "the record fails to show that the claimant's impairments either singly or in combination are of sufficient severity to meet a listed impairment."  AR at 20.  He did not address the effect, if any, of Plaintiff's obesity on her depression or her myofascial pain, or her ability to work.

The facts of this case differ from those of Celaya in several important respects, and instead resemble those in Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005), where the court found no error in the ALJ's lack of consideration of the claimant's obesity.  In Celaya, the plaintiff was an illiterate

10

pro per. 332 F.3d at 1179, 1182. Here, Plaintiff is a certified nursing assistant who was represented by counsel at her administrative hearing and on appeal. Yet, not until her appeal to this Court did Plaintiff raise obesity as a factor. Moreover, there is no evidence in the record establishing whether obesity affects either her fibromyalgia or her depression. Even now, she fails to specify what effect, if any, obesity has on her depression or her myofacial pain, or what listing she would equal, and instead asks the Court to make a medical determination based on "common sense." See Motion at 15. Burch distinguished Celaya on just such grounds:

> [T]he record does not indicate that Burch's obesity exacerbated her other impairments (other than possibly her back pain). More significantly, Burch was represented by counsel. While this Court mentioned in *Celaya* that even where a claimant is represented by counsel the ALJ has some burden to develop the record, this Court did not specify that parameters of that burden. . . . Although Burch contends that the ALJ erred in not considering obesity in determining whether she meets or equals a listing impairment, she does not specify which listing she believes she meets or equals. Further, she does not set forth any evidence which would support the diagnosis and findings of a listed impairment. . . . An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. . . . the only evidence in the record relating to her obesity are notes from doctors who observed weight gain, indicated that Burch is obese, and recommended that she participate in a medically supervised weight loss program. We therefore conclude that the ALJ did not commit reversible error by failing to consider Burch's obesity in determining whether she met or equaled the requirements of a listed impairment.

400 F.3d at 682-83 (internal citations omitted). The Court therefore denies Plaintiff's motion and grants Defendant's motion on this point.

### 3. The ALJ's credibility evaluation, while supported by some evidence, ignored other evidence in the record.

Plaintiff contends that the ALJ erred in discounting her own statements concerning her symptoms and limitations. An ALJ must provide "clear and convincing" reasons for discounting a claimant's subjective pain complaints when "medical evidence establishes an objective basis for some degree of the symptom and no evidence affirmatively suggests that the claimant was malingering." Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989) (citing Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984)). Further, in the absence of affirmative evidence of malingering, the ALJ must, in rejecting a claimant's testimony, specifically state which testimony is not credible and state the facts in the record that lead to that conclusion. Dodrill, 12 F.3d at 918

11

1 (citing Varney v. Sec'y of Health and Human Servs., 846 F.2d 581, 548 (9th Cir. 1988)); see also
2 Moisa v. Barnhart, 367 F.3d 882, 884 (9th Cir. 2004) (citing Rollins v. Massanari, 261 F.3d 853,
3 856 (9th Cir. 1991)).

4 In evaluating pain, the claimant must produce medical evidence of an underlying impairment
5 which is reasonably likely to be the cause of the alleged pain. Bunnell v. Sullivan, 947 F.2d 341,
6 343 (9th Cir. 1991). Once this evidence is produced, medical evidence of the severity of pain is not
7 required. Id. Therefore, the ALJ cannot discredit a claimant's allegations of pain severity only on
8 the grounds that they are "unsupported by objective medical evidence." Id. The ALJ "may discredit
9 the claimant's [pain] allegations based on inconsistencies in the testimony or on relevant character
10 evidence" as long as there are "specific findings that are supported by the record." Id. at 346. The
11 ALJ may also cite a lack of objective medical evidence supporting the alleged impairment as a
12 "specific and substantial reason." Morgan v. Comm'r., 169 F.3d 595, 600 (9th Cir. 1999). But the
13 ALJ may not discredit a claimant's testimony regarding pain and deny benefits solely because the
14 degree of pain the claimant alleges is not supported by objective medical evidence. Bunnell, 947
15 F.2d at 346-47.

16 The ALJ legitimately noted numerous inconsistencies in the record. AR at 20, see also AR
17 at 405, 413, 749, 760, 790, 921-24, 989. A Court normally should not second-guess an ALJ's
18 findings. Here, however, the ALJ made a number of factual errors and failed to consider the
19 corroborating testimony from third parties and from Plaintiff's own treating physicians, as set forth
20 above, raising a serious question about whether his credibility determination was really supported by
21 substantial evidence in the record as a whole. The Court therefore grants Plaintiff's motion and
22 remand this issue for further determination after consideration of the full record.

23 **C. Plaintiff Has Not Demonstrated That The Case Should Be Remanded To A Different ALJ.**
24

25 Plaintiff argues that the ALJ has "demonstrated a preexisting conviction that fibromyalgia
26 cannot cause disabling pain," and therefore requests reassignment to a different ALJ on remand.
27 Motion at 24. Such a conviction would not, of course, be proper. However, although the ALJ erred
28 in several respects and the Court is concerned by these errors, the Court is not convinced that the

errors were so egregious as to require reassignment. The Court therefore denies Plaintiff's request.

## V. CONCLUSION

Plaintiff's motion for summary judgment is granted in part and denied in part, Defendant's cross-motion for summary judgment is granted in part and denied in part, and the case is remanded to the ALJ for further proceedings in accordance with this Order.

**IT IS SO ORDERED.**

Dated: February 22, 2006

*Elizabeth D. Laporte*
ELIZABETH D. LAPORTE
United States Magistrate Judge