IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA V. ANDERSON,<br><br>        Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social Security<br><br>        Defendant.<br>_____/ | No. C-05-01331 EDL<br><br>**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES UNDER THE EQUAL ACCESS TO JUSTICE ACT** |

## I.   INTRODUCTION

Plaintiff Laura Anderson moved for summary judgment, contending that an Administrative Law Judge ("ALJ") who denied her social security disability benefits had erred when he had failed to consider or improperly discounted evidence regarding her mental illness, her fibromyalgia, and her obesity, and she further argued that the ALJ's assessment of her credibility was not supported by substantial evidence. Defendant opposed the motion and filed a cross-motion for summary judgment. On February 22, 2006, the Court granted in part and denied in part both motions, and remanded the case to the ALJ for further fact-finding.

Plaintiff now petitions this Court to award her attorney, Dr. Matthew L. Howard, attorney's fees pursuant to the Equal Access to Justice Act. See 28 U.S.C. § 2412 (the "EAJA"). Defendant does not contest that Dr. Howard is entitled to the statutory rate, adjusted for inflation, for each of the hours he reported working on the case, but opposes Dr. Howard's request for a "special factors" enhancement. Thus, the only question for the Court is whether special factors were present.

## II.   DISCUSSION

The EAJA limits attorney fees to $125 per hour "unless the court determines that an increase

in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii) (2005). Plaintiff requests fees in excess of this statutory rate, and asks that the Court award Dr. Howard $7,023.03, consisting of 43.3 hours at an hourly rate of $156.19 (which takes into account the statutory rate of $125 plus a cost-of-living increase) and 2.6 hours of paralegal time at an hourly rate of $100, plus a special factors enhancement of $4,300 for Dr. Howard's time, for a total of $11,323.03. Defendant has conceded that an increase in the cost of living justifies an hourly rate of $156.19, and does not dispute that the hours that Plaintiff's legal team spent on the case were reasonable. Defendant, however, disagrees that Plaintiff is entitled to the $4,300 enhancement for "special factors."

> To earn a special factors enhancement under the EAJA, attorneys must be qualified in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question – as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language. Where such qualifications are necessary and can be obtained only at rates in excess of the [statutory cap], reimbursement above that limit is allowed.

Pierce v. Underwood, 487 U.S. 552, 572 (1988). Pierce does not, however, intend to limit the "universe of such specialties . . . to patent law alone[;]" and an attorney who specializes in social security law is not automatically precluded from an enhancement. See Pirus v. Bowen, 869 F.2d 536, 541 (9th Cir. 1989). In addition to having a practice focused on social security cases, Dr. Howard also has expertise as a licensed physician, which may be relevant in many social security cases. The Court concludes that Dr. Howard has the type of specialized skills contemplated by the Supreme Court in Pierce.

Plaintiff still must establish that her attorney's specialized skills were "in some way needed in the litigation and cannot be obtained elsewhere at the statutory rate." Pirus, 869 F.2d at 541 ("The fact that prevailing hourly rates in a community might dissuade attorneys from taking a case at [the statutory cap] was not the type of 'limited availability' that Congress had in mind . . . Congress instead intended for courts to deviate from the statutory cap only if there was limited availability of 'attorneys having some distinctive knowledge or specialized skill *needful for the*

1 *litigation in question*'" (citing Pierce, 487 U.S. at 572)).  In Pirus, the court concluded that the
2 special expertise of the plaintiffs' attorneys was needed because the case was a class action
3 involving a highly complex area of the Social Security Act which required substantial knowledge of
4 the legislative history of a particular provision of the Act, and no other lawyers in the area possessed
5 the necesssary skills.  Id. at 542.

6     In contrast to an unusually complex social security case like Pirus, courts usually do not
7 award a special factors enhancement in routine social security actions.  See Stockton v. Shalala, 36
8 F.3d 49, 50 (8th Cir. 1994) (affirming district court refusal to exceed statutory rate in "a straight-
9 forward social security disability case that did not involve particularly difficult or complex issues . .
10 . The fact that Stockton's attorney is experienced in social security cases does not in itself warrant a
11 fee in excess of the statutory rate" (citing Pierce, 487 U.S. at 572)); Chynoweth v. Sullivan, 920 F.2d
12 648, 650 (10th Cir. 1990) (no abuse of discretion to deny special factors enhancement in case where
13 court made no findings that the social security case was particularly difficult and explaining that
14 "[a]lthough Social Security benefits law involves a complex statutory and regulatory framework, the
15 field is not beyond the grasp of a competent practicing attorney with access to a law library and the
16 other accouterments of modern legal practice. . . .  We cannot say that the law of Social Security
17 benefits falls sufficiently outside the mainstream of general legal practice to be automatically
18 entitled to enhancement" under the EAJA)

19     Plaintiff focuses on the limited availability of attorneys who specialize in social security
20 cases in her geographic area, but she does not establish that such specialized skills were needed in
21 the litigation.  Even if Dr. Howard is more experienced than other attorneys with social security
22 practices in Mendocino, Lake, Sonoma, Humboldt, and Del Norte Counties, that superior experience
23 is not relevant for purposes of EAJA if it was not needed in the case.  Plaintiff contends that her
24 attorney's "medical knowledge enhances his ability to analyze and pursue these claims.  The insight
25 into the likely limitations caused by claimed impairments provided by [his] medical training cannot
26 be provided by any other attorney."  EAJA motion at 5.  This is undoubtedly accurate, but it is still
27 not evident to the Court that either medical knowledge or expertise in social security was needed in
28 this case.  Plaintiff moved for summary judgment on the ground that the ALJ had ignored or

3

1  improperly discounted evidence in the record, and the Court remanded the decision on that ground –
2  what Plaintiff herself called an "obvious legal error." EAJA motion at 4, n.1.

3       This situation differs from another case where Dr. Howard used his specialized skill to
4  identify the otherwise unknown disease affecting the claimant. See Eib v. Barnhart, 2005 U.S. Dist.
5  Lexis 24573 (N.D. Cal. Oct. 7, 2005). In Eib, Dr. Howard represented a social security claimant
6  after her "original attorney dropped the case, in part, based on his conclusion that plaintiff had no
7  demonstrable objective disease to explain her symptoms, making her case too difficult to pursue at
8  any level." Id. at *5. The plaintiff moved the court to award enhanced fees for special factors under
9  the EAJA. The court granted the motion, holding that Dr. Howard had distinctive knowledge or
10 skills based on his being one of the only practicing physicians in the United States who has an
11 identifiable Social Security practice; that his expertise was needed in the case as he was able to
12 recognize the disease from which plaintiff suffered as "classical dumping syndrome" (which
13 presumably a non-physician could not have done); and that his unique skills and distinctive
14 knowledge were not available at the statutory cap. Id. at **5-6. Here, Dr. Howard did not identify
15 Plaintiff's conditions on his own; her treating physicians diagnosed fibromyalgia and depression.

16      Plaintiff also contends that the contingency fee agreement qualifies as a special factor.
17 Pierce, however, specifically held that contingency was not a "special factor" that justified an
18 enhancement: "[W]e do not think it was Congress' purpose, in providing for reimbursement in a
19 very small category of cases, to subsidize all contingent-fee litigation with the United States." 487
20 U.S. at 574. Although Plaintiff cites Gisbrecht v. Barnhart, 535 U.S. 789, 796 (2002), that case does
21 not address whether contingency arrangements are "special factors" under the EAJA. Accordingly,
22 while Dr. Howard does have a specialized skill which may well justify enhancement in an
23 appropriate case, Plaintiff has not met her burden under Pierce of establishing that this that skill was
24 required to successfully represent her in this case.
25 //
26 //
27 //
28 //

4

### III. CONCLUSION

The Court grants Plaintiff's petition for fees pursuant to the Equal Access to Justice Act and awards Plaintiff costs and fees in the total amount of $7,023.03.

**IT IS SO ORDERED.**

Dated: April 24, 2006

ELIZABETH D. LAPORTE
United States Magistrate Judge